UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RUSSELL E. BRETAN,

Movant,

-against-

05 Civ. 0916 (LAK)
(03 Crim. 0358 (LAK))

UNITED STATES OF AMERICA,

Respondent.

. 02681

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-31-06

**MEMORANDUM OPINION**

Appearances:

Alexander E. Eisemann
*Attorney for Movant*

Daniel W. Levy
Assistant United States Attorney
MICHAEL J. GARCIA
UNITED STATES ATTORNEY

LEWIS A. KAPLAN, *District Judge.*

Movant was convicted on his plea of guilty of possession of child pornography,
receipt of child pornography, attempted possession of child pornography, and attempted receipt of
child pornography. Prior to sentencing, the government objected to the presentence report on the
theory that an upward adjustment was warranted pursuant to USSG § 2G2.2(b)(2)(B) because the
defendant had distributed child pornography for a thing of value but not for pecuniary gain.

**Returned to chambers for scanning on** 2/2/06
**Scanned by chambers on** _____

Defendant did not challenge this argument, focusing his attention instead on a series of departure applications.

The Court adopted the government's proposed five level upward adjustment and determined that defendant's adjusted offense level was 27, resulting in a guideline range of 70 to 87 months. It rejected many of defendant's downward departure applications but did depart downward by two levels based on his minor role in the offense, by analogy to USSG § 3B1.2.[1] It sentenced defendant principally to a term of imprisonment of 57 months, i.e., at the bottom of the range. No appeal was filed.

Defendant now moves, pursuant to 28 U.S.C. § 2255, to vacate, correct or set aside his sentence on a plethora of grounds.

## Section 2255 Standards

It is useful at the outset to state relevant legal standards governing Section 2255 motions.

Relief is available under Section 2255 only "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error . . . that constitutes 'a fundamental defect which

---

[1]     Bretan was not eligible for a departure under USSG § 3B1.2, which applies only to minor participants in crimes involving more than one participant, because the only other "participants" in his crimes were government agents, who cannot be "participants" under the Guidelines. *United States v. Speenburgh*, 990 F.2d 72, 74 (2d Cir. 1993). The Second Circuit, however, permits a departure by analogy to § 3B1.2 where a defendant would have been eligible for relief under that section had the other participants not been government agents. *Id.* at 76.

inherently results in a complete miscarriage of justice.'"[2] Thus, Section 2255 is unavailable to review many claims of error that would be available on direct review, quite apart from any issue of procedural default.

Even with respect to grounds otherwise cognizable on a Section 2255 motion, such a motion is not a substitute for a direct appeal.[3] A defendant may not raise any issues on a Section 2255 motion that could have been raised on direct appeal absent (1) "cause" for the procedural default and "prejudice" arising from the failure, or (2) a demonstration of actual innocence of the offense of conviction.[4]

### Substantive Grounds

*Upward Adjustment for Distribution*

Bretan first claims that the Court improperly imposed a five level upward adjustment under USSG § 2G2.2(b)(2)(B). He asserts that the images he e-mailed were not in fact child pornography, there was no evidence that he knew they were child pornography, he did not intentionally distribute child pornography, and the Court's factual findings on these points were

---

[2] *Graziano v. United States,* 83 F.3d 587, 589-90 (2d Cir. 1996) (citation omitted); *accord* 2 RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 41.3b, at 1723-26 (4th ed. 1991).

[3] *E.g., Bousley v. United States,* 523 U.S. 614, 622 (1998).

[4] *See, e.g., Rosario v. United States,* 164 F.3d 729, 732 (2d Cir. 1998).

This procedural bar rule admits of an exception where the movant establishes ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668 (1984). *Massaro v. United States,* 538 U.S. 500, 504-05 (2003).

insufficient. His reply memorandum claims also that his guideline range was determined by the erroneous application of USSG § 2G2.2 rather than 2G2.4.

These claims are not cognizable on this Section 2255 motion, as neither an erroneous imposition of the upward adjustment (or a failure to depart downward in light of Bretan's alleged lack of knowledge that the material was child pornography) nor an erroneous choice of the applicable guideline, if either occurred, would have resulted in a constitutional error or "a complete miscarriage of justice."[5]

Nor does repackaging the claim as one based on supposedly newly discovered evidence avail. The evidence upon which the argument rests was in defendant's possession when he entered his plea and was sentenced and therefore is not newly discovered. This makes it

---

5

    *See Graziano v. United States*, 83 F.3d 587, 589-90 (2d Cir. 1996) ("claims regarding . . . error in failing to properly apply the Sentencing Guidelines are neither constitutional nor jurisdictional" and are not reviewable under § 2255 "absent a complete miscarriage of justice").

    Bretan contends that *Graziano* does not survive *United States v. Booker*, 125 S.Ct. 738 (2005), because "there is no principled distinction . . . between actual innocence of a crime that mandates certain punishment and a mandatory guideline that mandates certain punishment." Mov. Reply Mem. 14. The argument is unpersuasive. *Booker* applies to sentencing following a criminal conviction. *Graziano* dealt instead with the nature of claimed errors reviewable under Section 2255, a statute of limited scope. The procedural postures are entirely different, the defendant's rights being far broader in the original prosecution than on collateral attack. Indeed, a defendant does not even have a constitutional right to counsel in bringing a collateral attack on a criminal conviction. *E.g., Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987).

    In any case, Bretan (for reasons set forth in the government's memorandum at pages 19-26) has not demonstrated cause for failing to raise these issues on appeal or prejudice from the failure to do so.

unnecessary to pass on the implicit suggestion that a newly discovered evidence claim is cognizable under Section 2255.[6]

*Failure to Hold Evidentiary Hearing*

Bretan's next claim is that the Court deprived him of due process of law by failing to conduct an evidentiary hearing at sentencing on supposedly disputed facts and made findings based on insufficient evidence. The government argues that this claim has been procedurally defaulted. Even assuming that the argument were available to Bretan despite the lack of an appeal, however, it would be without merit.

Bretan had no constitutional or other right to have his sentence determined by any particular means. The method of resolving factual disputes for sentencing purposes rests in the discretion of the sentencing judge.[7] Movant has failed to show that the Court's method of determining the sentence was a complete miscarriage of justice. Moreover, this particular claim of error is a tempest in a teapot. As the amended petition makes abundantly clear, movant's complaint is that the Court improperly resolved a factual issue raised by disputed opinions of two mental health

---

[6]    Our Court of Appeals on occasion has passed on newly discovered evidence claims under Section 2255. *E.g., Giacalone v. United States,* 739 F.2d 40, 43 (2d Cir. 1984) (requiring newly discovered evidence before allowing relitigation on habeas of a claim that previously was decided on direct appeal). It is not clear, however, that any availability of Section 2255 as a vehicle for such contentions survives *Herrera v. Collins,* 506 U.S. 390, 400-04 (1993), absent an independent constitutional violation. *See, e.g., Ida v. United States,* 207 F. Supp.2d 171, 180 (S.D.N.Y. 2002).

[7]    *E.g., United States v. Slevin,* 106 F.3d 1086, 1091 (2d Cir. 1996); *see* FED. R. CRIM. P. 32(c)(1) cmt. ("court may *in its discretion*" hold evidentiary hearing on objections to presentence report) (emphasis added).

experts in determining not to grant a downward departure on the ground of diminished capacity.[8] But he has failed to offer any basis for believing that the Court would have reached a different result had Dr. Krueger testified in person. Even more significant, he has not seriously addressed the Court's entirely independent alternative holding that it would have denied the departure even if it had concluded that the guidelines criteria for diminished capacity had been satisfied because it did "not think the case . . . sufficiently extraordinary."[9]

*Mandatory Application of Sentencing Guidelines*

The next argument, set forth in Bretan's third and fourth claims, is that the mandatory application of the Sentencing Guidelines violated his Fifth and Sixth Amendment rights, presumably as demonstrated by *United States v. Booker*.[10] The argument is baseless.

Bretan's conviction became final in February 2004 upon the expiration of the time to appeal from the judgment of conviction. *Booker* "does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that *Booker* issued."[11]

---

[8]

Am. Pet. ¶¶ 34-42.

[9]

Tr., Jan. 16, 2004, at 24.

[10]

543 U.S. 220 (2005).

[11]

*United States v. Guzman*, 404 F.3d 139, 141 (2d Cir.), *cert. denied* (Nov. 28, 2005) (No. 05-5187).

*Extension of Time Within Which to Appeal*

Bretan's request for an extension of the time within which to file a notice of appeal is at least equally meritless. Section 2255 is not an appropriate vehicle for such an application. The proper basis would have been Fed. R. App. P. 4(b)(4), which permits extensions upon a finding of excusable neglect or good cause "for a period not to exceed 30 days from the expiration of the time otherwise prescribed by . . . Rule 4(b)." The time "otherwise prescribed by . . . Rule 4(b)" expired in February 2004, far more than 30 days ago and, for that matter, far more than 30 days before the filing in January 2005 of the initial motion under Section 2255.

*Ineffective Assistance of Counsel*

Bretan mounts a broad attack on the effectiveness of his prior counsel, part of it consisting of a recasting of arguments alluded to above in terms of the alleged deficiencies of that representation.

The central focus of the ineffective assistance argument is the five level upward adjustment of Bretan's offense level pursuant to USSG § 2G2.4(c)(2) and 2G2.2 based on his distribution of "material involving the sexual exploitation of a minor."[12] He contends that counsel failed adequately to investigate the contents of the his computer hard drive, where the government eventually found the e-mail messages and attached images. Had he done so, Bretan argues, counsel would have found that the images in fact were not child pornography (i.e., "material involving the sexual exploitation of a minor"), challenged the upward adjustment, and prevailed. Even if the images were child pornography, appropriate investigation would have revealed that the defendant

---

12

UNITED STATES SENTENCING COMMISSION, GUIDELINES MANUAL (2003).

did not believe that they were and did not intend to distribute child pornography, thus affording a basis for a downward departure application. He contends also that defense counsel failed him by, among other things, giving him erroneous advice as to his sentence exposure prior to the entry of his guilty plea, failing to challenge the constitutionality of the Sentencing Guidelines, and failing to file an appeal.

It is well to note at the outset that ineffective assistance of counsel is a difficult argument. In order to prevail, Bretan must show that "counsel's performance was so defective that 'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment' . . . and that counsel's errors were 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"[13] To satisfy the first prong, movant is required to show that counsel's performance was "outside the wide range of professionally competent assistance."[14] To satisfy the second, movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[15]

*Allegedly Inaccurate Advice Regarding Sentencing Exposure*

Bretan claims that his former counsel was ineffective because he advised him that the highest sentence he could face if he pleaded guilty was 41 months imprisonment and, depending

---

[13]

*Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

[14]

*Strickland*, 466 U.S. at 690. *Accord, e.g., Hurel Guerrero v. United States*, 186 F.3d 275, 281 (2d Cir. 1999).

[15]

*Strickland*, 466 U.S. at 694.

upon the Court's view of the guidelines, the maximum might be as low as 24 months.[16] and that he relied on this advice in pleading guilty. His counsel flatly denies having given such advice.[17] This factual dispute, however, is of no moment.

Prior to pleading guilty, Bretan received a *Pimentel* letter, which stated the government's view that the guideline range applicable to him was 41 to 51 months imprisonment.[18] Prior to entering his plea, Bretan stated under oath that no promises or assurances about his sentence had been made to him and that he understood that (a) the government was not bound by the *Pimentel* letter to the extent it subsequently might learn additional relevant facts and (b) the Court was not bound by the *Pimentel* letter in any case.[19] He said also that he understood that any prediction about his guideline range could be wrong "because whoever made it may not have all the information the court will have at the time of sentence."[20] Thus, Bretan knowingly took the risk that the sentence imposed might be higher than anything his counsel had predicted and higher than that set out in the *Pimentel* letter. Even if his counsel incorrectly predicted his guideline range, his representation was not constitutionally deficient in this respect.[21]

---

[16]

Am. Pet. ¶ 59.

[17]

Schechter Aff. ¶¶ 20-21.

[18]

Gov't Ans. Ex. F.

[19]

Tr., July 10, 2003, at 13.

[20]

*Id.*, at 13-14.

[21]

See *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989) (erroneous prediction of possible sentencing range under the guidelines not ineffective assistance of counsel); *Rivera v. United States*, 893 F. Supp. 1238, 1248 (S.D.N.Y. 1995).

*Alleged Inadequate Investigation and Sequelae*

Bretan and his former attorney disagree as to some of the pertinent facts. The attorney states that Bretan, in the context of a discussion about the risk of a substantial upward adjustment for distribution of child pornography, categorically assured him early in the representation that he never had distributed, traded, or sent out child pornography.[22] Bretan denies any such "blanket assurance," arguing that he told the attorney only that he "did not <u>remember</u> distributing any child pornography . . ."[23] He contends that this equivocal answer and other indicia of flawed memory rendered counsel's failure to search the hard drive for evidence of distribution of child pornography constitutionally deficient. Had he reviewed the hard drive adequately, he would have found that the images that the government claimed Bretan had distributed did not contain child pornography, either because they did "not depict anything falling within the controlling definition"[24] or because the images may have been "morphed," "computer generated," or "age processed"[25] and thus may not have involved the sexual exploitation of a minor. But it is unnecessary to deal with the question whether counsel's investigation was adequate, as Bretan has failed to establish prejudice, viz. a reasonable probability that the result would have been different.

---

[22]

Schechter Aff. ¶¶ 8-10.

[23]

Bretan Decl. ¶¶ 4-6 (emphasis in original).

[24]

Am. Pet. ¶¶ 17-18.

[25]

*See Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) (provision of Child Pornography Prevention Act of 1996 banning virtual child pornography violates First Amendment).

Former USSG § 2G2.4(c)(2), which in turn referred to USSG § 2G2.2 and the upward adjustment of which Bretan complains, was triggered by "trafficking in material involving the sexual exploitation of a minor." The presentence report, which the Court adopted,[26] specifically stated that the defendant had trafficked in child pornography.[27] "Child pornography" is defined in relevant part as "any visual depiction . . . of sexually explicit conduct, where . . . the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct."[28] Thus, trafficking in child pornography necessarily involves trafficking "in material involving the sexual exploitation of a minor." The Court's finding therefore was entirely adequate to support the upward adjustment. Nor has Bretan offered any basis for concluding that the finding probably would have been different had counsel challenged it at sentencing.[29]

---

26

Tr., Jan. 16, 2004, at 3.

27

Presentence report ¶¶ 41, 44, 46.

28

18 U.S.C. § 2256(8)(A).

29

There is no substantial basis for asserting that the evidence before the Court was insufficient to justify its finding that the images involved the sexual exploitation of real minors. The Second Circuit and every other circuit to have passed on the issue – with one exception that was vacated on rehearing – have held that nothing beyond a simple review by a finder of fact is necessary to conclude that the images in question involved actual minors, as opposed to young adults or computer-generated or -altered images. *United States v. Irving,* 432 F.3d 401, 411-13 (2d Cir. 2005); *United States v. Destio,* 153 Fed. Appx. 888, 892-93 (3rd Cir. 2005); *United States v. Farrelly,* 389 F.3d 649, 652-54 (6th Cir. 2004); *United States v. Slanina,* 359 F.3d 356, 357 (5th Cir.), *cert. denied,* 125 S. Ct. 288 (2004); *United States v. Rearden,* 349 F.3d 608, 614 (9th Cir. 2003); *United States v. Kimler,* 335 F.3d 1132, 1142 (10th Cir.), *cert. denied,* 540 U.S. 1083 (2003); *United States v. Deaton,* 328 F.3d 454, 455 (8th Cir. 2003); *United States v. Hall,* 312 F.3d 1250, 1260 (11th Cir.2002), *cert. denied,* 538 U.S. 954 (2003); *contra, United States v. Hilton,* 363 F.3d 58, 66 (government must present evidence, in addition to the images themselves, that images involved real minors), *vacated* 386 F.3d 13 (1st Cir. 2004) (habeas relief affirmed on ground that trial court failed to find that images were of real minors).

This leaves movant's contention that the images were not child pornography because they may not have involved real minors, either because the images were computer generated or because the images did not involve minors but had been altered digitally to make them appear so. The only support offered for those propositions is an unsworn letter from a computer consultant who says only that "[a]ny of the suspect images . . . *could have been* morphed," "*could [have] be[en]* age-processed," and "*may have been* computer generated."[30] The consultant, however, does not opine that the images *were* computer generated or altered or even that it is more likely than not that they were products of digital manipulation. His report, assuming its accuracy, therefore is insufficient to establish that there is a reasonable probability that the Court would have rejected the government's assertion that the movant distributed images involving the sexual exploitation of real minors had the point been raised by counsel.

As movant has failed to demonstrate a reasonable probability that the outcome would have differed had counsel reviewed the hard drive and argued that the images that movant distributed did not involve sexual exploitation of real minors, his ineffective assistance claim fails in this regard regardless of whether counsel culpably failed to examine the hard drive with greater care. Moreover, the Court has reviewed the images in connection with this motion. It has no doubt that at least a number of them depict sexual exploitation of real minors.[31]

---

30

Kessler report (emphasis added).

31

The parties have agreed that 16 of the 24 images contained on a compact disk containing Court Exhibits I-1, J-1 through J-4, K-1 through K-2, L-1 through L-3, M-1 through M-11, and N-1 through N-3 (a copy of which has been filed under seal) – specifically, Court Exhibits I-01, K-1 through K-2, M-2 through M-11, and N-3, were attachments to the five e-mails referred to in the presentence report that the Court found were distributed by Bretan. Letter, Daniel W. Levy, Esq., Jan. 31, 2006. The Court finds that at least Court Exhibits K-1, K-2, M-2, M-3, M-6, M-10, M-11 and N-3 depict sexual exploitation of real minors.

*Movant's Alleged Lack of Knowledge and Intent to Distribute Child Pornography*

Bretan next argues that counsel was ineffective in that he failed to (1) challenge the application of USSG § 2G2.2 on the ground that movant did not know that the images he distributed constituted child pornography and (2) seek a downward departure on the ground that movant did not intend to distribute child pornography.

There is nothing in the text or commentary of the relevant guidelines provisions that makes a defendant's knowledge that distributed material constitutes child pornography material to the applicability of the Section 2G2.2(b)(2)(B) adjustment.[32] The lack of any such reference is especially telling in view of the fact that Application Note 1 to former Section 2G2.2 defines "distribution to a minor" (used in Section 2G2.2(b)(2)(C)) as "the *knowing* distribution to an individual as a minor,"[33] thus making plain that the lack of any reference in Section 2G2.2(b)(2)(B) to the defendant's mental state was deliberate.[34] Bretan's contention that *Booker* somehow requires proof of intent because that decision "transformed the mandatory guidelines into the equivalent of statutory offenses"[35] is wide of the mark, at least because *Booker* does not apply to cases on collateral review. Moreover, having reviewed the images, the Court fails to see how a person of

---

[32]

This contrasts sharply with the language of the statute that criminalizes distribution of child pornography. 18 U.S.C. § 2252A(a)(2).

[33]

Emphasis added.

[34]

*See United States v. Weisser,* 417 F.3d 336, 348 (2d Cir. 2005) (§ 2G2.2 applies regardless of intent to traffic).

[35]

Mov. Reply Mem. 10.

Bretan's intelligence could have failed to understand that the images depicted sexual exploitation of real minors. Bretan therefore was not prejudiced by counsel's failure to argue that knowledge that the distributed material involved real minors was a prerequisite to the upward adjustment.

This conclusion effectively disposes also of the argument that counsel should have sought a downward departure on the ground that Bretan not only did not know that the distributed images involved sexual exploitation of minors, but actively sought to avoid distributing any such images. Section 3553(b) of Title 18, which is implemented by Section 5K2.0 of the Guidelines, permits a district court to depart from the Guideline range if it "find[s] that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." [36] Departures are appropriate where the Guidelines do "not adequately take into account cases that are, for one reason or another, 'unusual.'" In view of the fact that the Sentencing Commission expressly made the defendant's mental state relevant to the propriety of an upward adjustment under former Section 2G2.2(b)(2)(C) but not under Section 2G2.2(b)(2)(B), it is impossible to conclude that the mental state accompanying distribution of images involving sexual exploitation of minors was a factor that the Sentencing Commission did not consider. Accordingly, counsel's failure to seek a downward departure on this ground could not have prejudiced the movant because the Court lacked the power to grant such a departure. Even if it had had that power, it would not have departed on this ground.

---

[36]

18 U.S.C. § 3553(b).

Apprendi *and* Booker

Bretan contends that his attorney was ineffective also because he failed to argue that the United States Sentencing Guidelines were unconstitutional based on the reasoning of the *Apprendi v. New Jersey,*[37] in which the Supreme Court held that "[o]ther than fact of a prior conviction, any fact that increases penalty for crime beyond the prescribed statutory maximum must be submitted to jury, and proved beyond reasonable doubt."[38]

The government would dismiss this contention with the back of a hand, relying on counsel's affidavit to the effect that he did not raise the point because it previously had been widely rejected.[39] Bretan's former counsel is correct in noting that attacks on the constitutionality of the Sentencing Guidelines had been rejected widely by the time of movant's sentencing,[40] and in the absence of other considerations, that would be dispositive.

There is another factor to consider, however. On October 20, 2003, almost three months before Bretan was sentenced, the Supreme Court granted *certiorari* in *Blakely v.*

---

[37]

530 U.S. 466 (2000).

[38]

530 U.S. at 490.

[39]

Schechter Aff. ¶ 36.

[40]

*United States v. Norris,* 281 F.3d 357, 361 (2d Cir. 2002) (rejecting argument that the federal sentencing guidelines are unconstitutional under *Apprendi*); *Gallego v. United States,* No. CV 04 5584CPS, 2005 WL 1398089, at *4 (E.D.N.Y. June 13, 2005) (noting that prior to *Booker,* the Second Circuit had rejected constitutional challenges to the federal sentencing guidelines); *Swerbilov v. United States,* No. 04-CV-3320 DRH MLO, 2005 WL 1177938, at *6 (E.D.N.Y. May 18, 2005) (same).

*Washington,*[41] a constitutional challenge to the Washington State sentencing statute, to consider "[w]hether a fact (other than a prior conviction) necessary for an upward departure from a *statutory* standard sentencing range must be proved according to the procedures mandated by *Apprendi.*"[42] Ultimately, the Court decided that question in the affirmative,[43] which later led to *Booker*'s invalidation of the provision of the Sentencing Reform Act that made the United States Sentencing Guidelines mandatory. Accordingly, although *Blakely* and *Booker* were not decided until after Bretan's sentencing, the grant of *certiorari* in *Blakely* already provided some indication that the constitutionality of judicial fact-finding pursuant to statutory sentencing schemes like the United States Sentencing Guidelines was in question.

The government argues that this is irrelevant because the Second Circuit has made clear that an attorney's failure to predict changes in the governing law does not constitute ineffective assistance of counsel.[44] To be sure, although the Second Circuit has not reached this precise issue, the prevailing view among district courts in this Circuit is that the failure to anticipate *Blakely* and *Booker* – and thus to argue the unconstitutionality of the United States Sentencing Guidelines at

---

[41]

540 U.S. 965 (2003) (granting cert).

[42]

*Blakely,* petition for writ of certiorari, 2003 WL 22427993 (May 5, 2003) (emphasis in original).

[43]

*Blakely v. Washington,* 542 U.S. 296 (2004).

[44]

*Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir. 1994).

sentencing or on appeal – did not constitute ineffective assistance of counsel, even when that failure occurred after the Supreme Court granted *certiorari* in *Blakely*.[45]

Asking whether Bretan's counsel should have predicted the Supreme Court's decisions in *Blakely* and *Booker*, however, loads the dice in the government's favor. A better way to frame the question is to inquire whether Bretan's counsel was ineffective for failing to make an argument based on *Apprendi* at Bretan's sentencing in order to preserve the point on appeal, as informed counsel should have known that the constitutionality of the federal sentencing guidelines might be in doubt and that preservation of the issue on direct appeal could prove most important.

There is little doubt that such an argument would have been rejected at sentencing under then current Second Circuit and Supreme Court precedent. If Bretan's attorney had preserved the argument at sentencing, however, Bretan could have appealed the adverse decision, leaving open at least the possibility that his conviction would not have become final by the time the Supreme Court decided *Booker* in January 2005. The Second Circuit's decision in *Coleman v. United*

---

[45] *Muniz v. United States,* 360 F.Supp.2d 574, 579 (S.D.N.Y. 2005) (counsel not ineffective for failing to raise *Apprendi* arguments at sentencing or on appeal even though defendant was sentenced more than a month after the grant of *certiorari* in *Blakely*); *Alston v. United States,* No. 5:04-CV-1049, 2005 WL 3434811, at *3 (N.D.N.Y. Dec. 13, 2005) (counsel not ineffective for failing to raise *Apprendi* arguments at sentencing even though defendant was sentenced almost two months after the grant of *certiorari* in *Blakely*); *Gallego* 2005 WL 1398089 at *4 (counsel not ineffective for failing to raise *Apprendi* arguments at sentencing or on appeal even though defendant was sentenced two months after the grant of *certiorari* in *Blakely*). *See also United States v. Cole,* No. 1:03-CR-26-01, 2005 WL 1278519, at *4-5 (D. Vt. May 26, 2005) (counsel not ineffective for failing to raise *Apprendi* arguments on appeal even though the Supreme Court granted *certiorari* in *Blakely* during the pendency of defendant's appeal); *Mercado v. United States,* No. 04 Civ. 10208 RCC, 2005 WL 1705066, at *2-3 (S.D.N.Y. July 20, 2005) (counsel not ineffective for failing to raise *Apprendi* arguments even though the Supreme Court granted *certiorari* in *Blakely* during the pendency of defendant's appeal).

*States.*[46] which held that *Apprendi* did not apply retroactively to convictions that were final before that case was decided, made it likely that this was the only way in which Bretan might benefit from a Supreme Court decision invalidating the United States Sentencing Guidelines. Further, there was no real downside to making an *Apprendi*-based argument at sentencing, even if the argument was almost certain to be rejected. The government claims that making such an argument might have detracted from other, more viable contentions, and that Bretan's counsel was entitled to focus on what he perceived as the strongest arguments. But there was no need to focus on this argument at any length; counsel could have made the point very briefly, noting that he sought only to preserve the point for appeal, without distracting the Court from his other arguments. To use a rough analogy, preserving the point was like drinking chicken soup for the common cold– it probably would not have helped, but it surely could not have hurt.

As discussed above, there is a "wide range of professionally competent assistance."[47] Many decisions of counsel fall within this range. Nevertheless, it does not seem too much to ask that constitutionally effective defense attorneys keep abreast of Supreme Court developments on matters of such ubiquitous importance as the respective roles of judges and juries in fact-finding for sentencing purposes. Accordingly, if the only question here were whether failure to preserve an *Apprendi*-based argument for appeal – given the Supreme Court's grant of *certiorari* in *Blakely* – fell outside the range of competent legal assistance, I probably would so conclude.

---

[46]

329 F.3d 77, 90 (2d Cir. 2003).

[47]

*Strickland*, 466 U.S. at 690.

But even if I were to decide the point, it would get Bretan only halfway. In order to establish that Bretan was deprived of his Sixth Amendment right to effective assistance of counsel, he must show that, absent error by counsel, there was a reasonable probability that he could have obtained a different result or, more specifically, that he might have benefitted from the Supreme Court's decision in *Booker.*

In *United States v. Guzman,*[48] the Second Circuit held that *Booker,* like *Apprendi,* did not apply retroactively to convictions that had become final before it was decided on January 12, 2005. Bretan was sentenced in January 2004 and, because he did not appeal, his conviction became final shortly thereafter. Had he appealed his sentence, however, it is at least conceivable that his case would have remained pending until *Booker* was decided. Accordingly, Bretan can satisfy the second prong of the *Strickland* test only by showing that his counsel was ineffective in failing to raise the *Apprendi* issue at sentencing *and* on direct appeal, and that – if he had appealed -- his case would have been pending on January 12, 2005.

Bretan has not satisfied this requirement, at least because he has not demonstrated that he would have appealed his sentence but for the ineffective assistance of counsel. There is no dispute that Bretan's attorney recommended against an appeal because of the possibility that, if Bretan appealed his sentence, the government would have cross-appealed the downward departure this Court had granted based on Bretan's minor role in the offense.[49] Nor does Bretan dispute that he consulted with several other attorneys regarding a potential appeal, some of whom recommended

---

[48]

404 F.3d at 141.

[49]

Bretan Decl. ¶¶ 11-12; Supplemental Schechter Aff. ¶ 5.

that he appeal and some of whom did not.[50] He argues, however, that his counsel failed to explain that the Second Circuit could have reversed the downward departure only if it found that this Court had abused its discretion and that he would have appealed his sentence if he had been so advised "because he would have understood that the risk of appealing was much lower" than counsel had suggested.[51]

There are two problems with this argument. First, the Court cannot say that it was outside the range of professional competence for Bretan's counsel to advise against appeal, given the Second Circuit precedent upholding the constitutionality of the United States Sentencing Guidelines. It was reasonable for counsel to conclude that the small possibility that the Second Circuit would revisit this issue did not justify an appeal that might jeopardize the downward departure Bretan had received, regardless of the standard the Second Circuit would have used to review this Court's departure decision. Second, and more importantly, even if this advice were not reasonable given the circumstances, Bretan has not proved that he would have appealed but for his counsel's advice. His bald assertions to that effect are insufficient, especially considering that he discussed the possibility of appeal with several other attorneys, at least some of whom advised him to appeal.

Accordingly, Bretan was not prejudiced by his counsel's failure to raise an *Apprendi* argument at sentencing or on direct appeal, and his claim of ineffective assistance of counsel therefore fails.

---

[50]

Bretan Decl. ¶ 12.

[51]

*Id.* ¶ 13.

*Conclusion*

For the foregoing reasons,[52] the motion for relief pursuant to Section 2255 is denied. A certificate of appealability is granted on the issue whether *Booker* is applicable to cases on collateral review; while the Second Circuit has resolved that issue, the Supreme Court has not yet ruled, and movant should be afforded the opportunity to preserve the issue for review. A certificate of appealability is granted also on the issue whether the failure to argue the unconstitutionality of the United States Sentencing Guidelines and to appeal from any adverse judgment on that claim constituted ineffective assistance of counsel on the facts of this case; as discussed above, the Second Circuit has not reached this precise issue. In all other respects, a certificate of appealability is denied, and the Court certifies that any appeal herefrom on any other issue would not be taken in good faith within the meaning of 28 U.S.C. §1915(a)(3).

SO ORDERED.

Dated:        January 31, 2006

Copies mailed 1·31·06
Chambers of Judge Kaplan
           ESR

Lewis A. Kaplan
United States District Judge

---

[52] The Court has considered movant's other contentions and found each to lack merit.